**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**THOMAS BILLARD**                              **CIVIL ACTION**

**VERSUS**                                      **NO.  06-0816**

**WARDEN**                                      **SECTION "S" (2)**

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  28 U.S.C. § 2254(e)(2)(B).

the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED**

**WITH PREJUDICE**.

I.     STATE COURT PROCEDURAL BACKGROUND

The petitioner, Thomas Billard, is incarcerated in the Elayn Hunt Correctional

Center in St. Gabriel, Louisiana.[2]  On August 10, 2000, Billard and a co-defendant,

Sharon Harrell, were charged by bill of information in Jefferson Parish with two counts

of armed robbery.[3]  The Louisiana Fifth Circuit Court of Appeal summarized the facts

of the case as follows:

> On January 20, 1999, at approximately 2:30 a.m., Gregory Smith and
> David Chryssoverges had just finished a carpet cleaning job at a fast food
> restaurant on Veterans Boulevard.  Chryssoverges remained in the restaurant
> while Smith went outside to the van to empty a reservoir tank.  Smith noticed four
> people approaching from the direction of a nearby bar.  Two of these individuals,
> a black male and a white female, continued walking towards the van, while the
> other two stayed behind.
> The black male, subsequently identified as defendant, asked Smith if he
> could give them a ride to Tulane Avenue.  Smith told defendant he could not do
> so because he and Chryssoverges had another job to complete in Kenner, which
> was in the opposite direction.  Smith then sat in the driver's seat of the van after
> which defendant asked Smith for a light for his cigarette.  Smith pressed the van's
> cigarette lighter and handed the lighter to defendant.  As defendant leaned over
> to light the cigarette, Smith saw two guns in the defendant's waistband.
> Thereafter, defendant told the girl, later identified as Sharon Harrell, to get in the
> van. When Harrell entered the passenger's side of the van, defendant removed the
> two guns and held them at waist-level while standing inside the open doorway of
> the van's driver's side.

---

[2]Rec. Doc. No. 1, Petition.

[3]St. Rec. Vol. 1 of 6, Bill of Information, 8/10/00.  Harrell had been charged with the same two
counts in a prior bill of information filed February 18, 2000.  St. Rec. Vol. 4 of 6, Bill of Information
(Harrell), 2/18/00.  That bill was amended to add Billard by the filing of the August 10, 2000 bill of
information.  Id., see District Attorney's handwritten note.

At that point, Chryssoverges exited the restaurant and noticed a red haired woman sitting in the passenger seat of the van. As Chryssoverges approached the van, he saw Smith in the driver's seat and the defendant standing next to Smith. Chryssoverges walked around to the passenger's side of the van and looked through the van at defendant. When Chryssoverges saw that defendant was holding two guns, he immediately blurted out, "Man are you crazy? Put those guns away." Chryssoverges said that the defendant "kind of smiled" at him, and Chryssoverges said that he felt frightened. Smith informed Chryssoverges that the two people wanted to go to Tulane. Chryssoverges agreed, but said that he needed to return to the restaurant to retrieve a clipboard, knowing that his reentry would trigger the alarm.

Chryssoverges reached the door, opened it and set off the alarm. At this point, defendant ordered Smith to get out of the van. Defendant stepped back, Smith jumped down from the driver's seat, and defendant climbed into the van. Defendant then pointed one of the guns at Smith and asked if he had any money. Smith threw a $5.00 bill into defendant's lap and backed away from the van. Smith begged defendant not to shoot and then ran towards the restaurant. Defendant sped away on Veterans Boulevard. Shortly thereafter, the police responded to the alarm and Smith and Chryssoverges gave descriptions of the perpetrators to the police. Chryssoverges testified that his cellular telephone, his gun, and his equipment to operate his business, were inside of his van when defendant took it. The van was subsequently recovered in Jackson, Mississippi.

In March of 1999, the case detective showed Chryssoverges and Smith two sets of photographs. One set contained photographs of defendant and some men, while the other set contained Harrell's photograph and some women. Chryssoverges positively identified defendant and Harrell, but Smith was only able to positively identify Harrell from the photographs. Smith explained that he could not make a positive identification of defendant because he purposefully did not look at the gunman.

Defendant was subsequently arrested and charged with two counts of armed robbery.

State v. Billard, 852 So.2d 1069, 1071-72 (La. App. 5th Cir. 2003); State Record Volume

5 of 6, Fifth Circuit Opinion, 03-KA-319, p. 3-4, July 29, 2003.

3

After severance of the defendants for trial, Billard's trial was held before a twelve-person jury on November 6 and 7, 2001.[4]  He was found guilty as charged on both counts of armed robbery.[5]

Billard's counsel filed a motion for a new trial challenging the sufficiency of the evidence, the denial of Billard's unspecified written motions and the overruling of defense objections at trial.[6]  The trial court denied the motion at a hearing held on November 15, 2001.[7]

That same day, in a separate proceeding, the co-defendant, Harrell, entered a plea of guilty to an amended bill of information charging her with two counts of attempted armed robbery.[8]  She was sentenced to two years and six months on each count.[9]

---

[4]St. Rec. Vol. 1 of 6, Trial Minutes (2 pages), 11/6/01; Trial Minutes (2 pages), 11/7/01; St. Rec. Vol. 2 of 6, Excerpt of Trial Transcript, 11/6/01; Trial Transcript, Part 1, 11/7/01; St. Rec. Vol. 3 of 6, Trial Transcript, Part 2, 11/7/01; St. Rec. Vol. 4 of 6, Motion to Sever Parties, 5/3/01 (granted 5/9/01, order attached).

[5]St. Rec. Vol. 1 of 6, Jury Verdict, 11/7/01; St. Rec. Vol. 3 of 6, Trial Transcript, Part 2, p. 237, 11/7/01.

[6]St. Rec. Vol. 1 of 6, Motion for New Trial, 11/15/01; Motion Hearing Minutes, 11/15/01; St. Rec. Vol. 3 of 6, Transcript of Motion for New Trial, 11/15/01.

[7]Id.

[8]St. Rec. Vol. 1 of 6, Bill of Information, 8/10/00 (amended 11/15/01); St. Rec. Vol. 4 of 6, Plea and Sentencing Minutes (Harrell), 11/15/01.

[9]St. Rec. Vol. 4 of 6, Plea and Sentencing Minutes (Harrell), 11/15/01.

Thereafter, on December 10, 2001, the state trial court sentenced Billard to serve concurrent sentences of 50 years imprisonment as to each count.[10]  The State filed a multiple bill to which Billard entered a guilty plea on January 28, 2002.[11]  The state trial court accepted the plea and found Billard to be a second offender as to the to the first count on which he was convicted, the armed robbery of Gregory Smith.  Billard was re-sentenced to serve 50 years on that count without benefit of probation or suspension of sentence and to run concurrently with his sentence.[12]

On appeal, Billard's counsel asserted two grounds for relief:[13] (1) The trial court erred in denying the motion for a new trial based on insufficient evidence to support the verdict. (2) The trial court erred in denying the motion to quash the second count in the bill of information as to the armed robbery of David Chryssoverges because the testimony did not establish threat, harm or demand of anything of value at the time of the

---

[10]St. Rec. Vol. 1 of 6, Sentencing Minutes, 12/10/01; St. Rec. Vol. 3 of 6, Sentencing Transcript, 12/10/01.

[11]St. Rec. Vol. 1 of 6, Multiple Bill, 12/10/01; Plea and Sentencing Minutes, 1/28/02; Waiver of Rights - Plea of Guilty Multiple Offender, 1/28/02; St. Rec. Vol. 3 of 6, Plea and Sentencing Transcript, 1/28/02.

[12]St. Rec. Vol. 1 of 6, Plea and Sentencing Minutes, 1/28/02; Waiver of Rights - Plea of Guilty Multiple Offender, 1/28/02; St. Rec. Vol. 3 of 6, Plea and Sentencing Transcript, 1/28/02.

[13]St. Rec. Vol. 3 of 6, Appeal Brief, 2003-KA-0319, p. 7-8, 4/8/03.

alleged robbery.   On July 29, 2003, the Louisiana Fifth Circuit affirmed Billard's conviction and sentences finding his claims without merit.[14]

Billard filed a timely writ application with the Louisiana Supreme Court on September 2, 2003.[15]   The Louisiana Supreme Court denied the application without reasons on February 6, 2004.[16]

Billard's conviction became final 90 days later, on May 6, 2004, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On October 25, 2004, Billard filed with the state trial court a pro se application for post-conviction relief asserting five grounds:[17] (1) The trial court and the district attorney erred in allowing the illegal seizure of his property. (2) The trial court and the district attorney erred in using a defective bill of information. (3) The trial court and the district

---

[14]State v. Billard, 852 So.2d at 1075; St. Rec. Vol. 5 of 6, 5th Cir. Opinion, 03-KA-319, p. 9, 7/29/03.

[15]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 03-KO-2437, 9/2/03 (timely postmark shown as 8/18/03); St. Rec. Vol. 4 of 6, La. S. Ct. Letter, 2003-KO-2437, 9/2/03 (postmark indicated as 8/18/03).

[16]State v. Billard, 865 So.2d 739 (La. 2004); St. Rec. Vol. 4 of 6, La. S. Ct. Order, 2003-KO-2437, 2/6/04.

[17]St. Rec. Vol. 5 of 6, Uniform Application for Post-Conviction Relief, Memorandum in Support, p. 3, 10/25/04.

attorney erred in a <u>Batson</u>[18] challenge violation. (4) The trial court and the district attorney erred in using known perjured testimony and false evidence. (5) The petitioner's trial counsel was ineffective.

On November 2, 2004, the state trial court denied the application.[19] The court held that review of the illegal seizure claim and the <u>Batson</u> claim were procedurally barred because they had not been raised on direct appeal, review of the defective bill of information claim and the use perjured testimony and false evidence claim were barred as repetitive of claims already addressed on direct appeal, and the ineffective assistance of counsel claim was without merit.

Billard thereafter filed a timely writ application with the Louisiana Fifth Circuit seeking review of that order.[20] The court denied the application on December 10, 2004, finding no error in the trial court's ruling.[21]

---

[18]<u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), prohibits the prosecution's use of peremptory challenges to exclude potential jurors on the basis of race.

[19]St. Rec. Vol. 5 of 6, Trial Court Order (3 pages), 11/2/04.

[20]The record does not contain a copy of this application. The filing date appears on the face of the court's order and has been confirmed by my staff with the clerk's office for the Louisiana Fifth Circuit. <u>See</u> St. Rec. Vol. 5 of 6, 5th Cir. Order, 04-KH-1387, 12/10/04.

[21]St. Rec. Vol. 5 of 6, 5th Cir. Order, 04-KH-1387, 12/10/04.

On February 1, 2005, Billard timely filed a writ application with the Louisiana Supreme Court.[22]  The court denied the application without reasons on January 9, 2006.[23]

## II.    FEDERAL HABEAS PETITION

On February 15, 2006, Billard filed a petition for federal habeas corpus relief in this court seeking relief on the following grounds:[24]   (1) illegal search and seizure; (2) defective bill of information; (3) Batson violations; (4) the State's use of known perjured testimony; and (5) ineffective assistance of counsel.

The State filed a response to the petition alleging that Billard's federal petition was not timely filed.[25]   Billard challenged the State's response, urging the court to consider his petition to be timely.[26]

## III.    STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[22]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 05-KH-286, 2/1/05 (timely postmark shown as 12/29/04); St. Rec. Vol. 5 of 6, La. S. Ct. Letter, 2005-KH-286, 2/1/05 (postmark indicated as 12/29/04).

[23]State ex rel. Billard v. State, 918 So.2d 1023 (La. 2006); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2005-KH-0286, 1/9/06.

[24]Rec. Doc. No. 1, Memorandum in Support, p. 3.

[25]Rec. Doc. No. 3.

[26]Rec. Doc. No. 4.

including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[27] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Billard's petition, which, for reasons discussed below, is deemed filed in this court on January 30, 2006.[28]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State's sole basis for opposition to the petition is that Billard's federal petition is not timely filed.  The State relies on its conclusion that Billard's two Louisiana

---

[27]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Billard's petition on February 15, 2006. Billard, however, signed the petition on January 30, 2006, which is the earliest date he could have submitted it to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

Supreme Court writ applications were not timely filed.  However, my review of the records reflects that both writ applications were postmarked within the 30-day period required by La. S. Ct. Rule X§5(a), (b).  This is sufficient to establish timely filing with the Louisiana Supreme Court.  See Marshall v. Cain, 155 Fed. Appx. 769, 2005 WL 3115095 (5th Cir. Nov. 22, 2005) (postmark date controls under La. S. Ct. Rule X§5); Causey v. Cain, ___ F.3d ___, 2006 WL 1413490 (5th Cir. May 24, 2006) (the prison mailbox rule applies to filings in Louisiana state courts).  The State's limitations defense is therefore rejected.

However, I find that, for the following reasons, two of Billard's claims are in procedural default and the remaining three are without merit, and his petition for federal habeas corpus relief must be dismissed for those reasons.  Billard is hereby given notice that this court is sua sponte raising procedural default as a bar to some of his claims, and any objection or response to the court's procedural default analysis must be asserted as provided at the end of this report.

## IV.   PROCEDURAL DEFAULT

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the federal claim and adequate to support that judgment.  Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S.

10

255, 260, 262 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. Harris, 489 U.S. at 263; Glover, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion. Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

In his first claim before this court, Billard alleges that detectives acting without a warrant improperly searched and seized his personal belongings, which were being held in storage at the hotel where he had been staying before his arrest. This issue was also the subject of a pretrial motion to suppress, which was denied by the trial court.[29] Billard raised this claim for the first time in his state court application for post-conviction relief. The state trial court refused to consider the claim, finding that it was in procedural default because it could have been raised on direct appeal and was not. The Louisiana Fifth Circuit and the Louisiana Supreme Court offered no other reasons for dismissal of the subsequent writ applications to those courts.

_____

[29]St. Rec. Vol. 5 of 6, Trial Court Order (3 pages), 11/2/04.

In another claim, Billard alleges that the State improperly used its peremptory challenges to exclude African-American males from the jury in violation of <u>Batson</u>. During voir dire, the state trial court denied defense counsel's <u>Batson</u> challenge, finding no pattern of discrimination.[30]  Billard raised this claim for the first time in his state court application for post-conviction relief.  The state trial court determined that the claim was in procedural default because it could have been raised on direct appeal and was not.  The Louisiana Fifth Circuit and the Louisiana Supreme Court offered no other reasons for dismissal of the subsequent writ applications to those courts.

A.    <u>INDEPENDENT AND ADEQUATE</u>

The basis for the state trial court's procedural dismissal of Billard's improper search and seizure and <u>Batson</u> claims can be found in La. Crim. Code P. art. 930.4(c), which provides for dismissal of a post-conviction application if it raises a claim which could have been raised on direct appeal.

For the foregoing state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  <u>Amos</u>, 61 F.3d at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  <u>Glover</u>, 128 F.3d at 902.  A

---

[30]<u>Id</u>.

state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief.  Id.

La. Code Crim. P. art 930.4(c) is clearly an independent state law procedural basis for denying review of an untimely raised post-conviction claim.  Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994) (Article 930.4 is independent and adequate basis to federal review); Washington v. Cain, 2000 WL 863980 (E.D. La. June 27, 2000) (same).

The state trial court determined that Billard had shown no reason why his improper search and seizure and Batson claims were not or could not have been raised in his direct appeal.  The bases for the claims were available from the record and the case law at the time of filing of the direct appeal.  Because the claim could have been raised on appeal, Article 930.4 was adequate to prevent review of the claim on post-conviction review.  Washington v. Cain, 2000 WL 863980 (E.D. La. June 27, 2000); State ex rel. Williams v. State, 786 So.2d 93 (La. 2001).

For these reasons, there exists an independent and adequate state procedural bar which prohibits federal review of Billard's improper search and seizure and Batson claims.

B.    CAUSE AND PREJUDICE

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental

13

miscarriage of justice."  <u>Glover</u>, 128 F.3d at 902 (citing <u>Coleman</u>, 501 U.S. at 731-32);

<u>Amos</u>, 61 F.3d at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107,

129 (1982)).

 To establish cause for a procedural default, a petitioner must demonstrate that

some objective factor external to the defense impeded his efforts to comply with the

state's procedural rule.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  The mere fact that

petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the

claim despite recognizing it, does not constitute cause for a procedural default.  <u>Id</u>. at

486.

 In this case, Billard has not offered any cause for the default which would excuse

the procedural bar imposed by Louisiana law.  My review of the record does not support

a finding that any factor external to the defense prevented Billard from raising the claims

in a procedurally proper manner.  The record also does not reflect any action or inaction

on the part of the State which prevented him from doing so.

 In anticipation that Billard may urge that the appellate counsel erred in failing to

present the claims in a timely manner, this too fails to establish cause to avoid the

procedural bar.  The law is settled that "the mere fact that counsel failed to recognize the

factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does

not constitute cause for procedural default." <u>Murray</u>, 477 U.S. at 486.  Supreme Court

doctrine will allow a petitioner to establish cause through the ineffective assistance of his

counsel if he can establish that counsel's failure to raise the issues timely or on appeal was itself constitutionally deficient performance.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).  However, before such a claim can be raised, the issue itself must be specifically exhausted through the state courts.  Id.  Billard has not done so, and the issue of whether appellate counsel's failure timely to seek review of the improper search and seizure and Batson claims was itself ineffective assistance is not properly before this court.  Id.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  Hogue, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and Billard has not alleged any actual prejudice.  Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Billard's improper search and seizure and Batson claims are therefore procedurally barred from review by this federal habeas corpus court.  See Trest v. Whitley, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time

restriction on filing for state post-conviction relief), vacated on other grounds, 522 U.S. 87 (1998).[31]

C.   FUNDAMENTAL MISCARRIAGE OF JUSTICE

Billard may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); Nobles, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

---

[31]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte. Id.

Billard does not present and the record contains nothing that suggests his actual innocence.  He presents nothing to this court that differs from the evidence presented to the jury at trial.  His habeas claims address procedural failings in the underlying criminal proceedings and not any alleged actual innocence.  For these reasons, Billard has failed to overcome the procedural bar to review of the improper search and seizure and <u>Batson</u> claims.  These claims are procedurally barred and must be dismissed with prejudice for this reason.

V.      <u>STANDARDS OF A MERITS REVIEW OF THE REMAINING CLAIMS</u>

Billard has asserted three other claims which are not procedurally barred.[32]  As to the non-barred claims, 28 U.S.C. §§ 2254(d)(1) and (2), as amended by the AEDPA, contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State

---

[32]I am aware that the state trial court barred review of two of these claims on post-conviction review because the issues of the defective bill of information and use of false and perjured testimony were repetitive of issues addressed on appeal. The bar relied upon was found in La. Code Crim. P. art. 930.4(a), which prevents <u>further</u> review of a claim raised on appeal because the issue was addressed in the prior proceeding. "[T]he bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." <u>Bennett v. Whitley</u>, 41 F.3d 1581, 1583 (5th Cir. 1994). For this reason, the bar imposed on post-conviction review does not affect this court's ability to consider on habeas review the state court's review of the merits of these particular claims on direct appeal.

court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (brackets in original); <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert. denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25).

## VI.   ALLEGEDLY DEFECTIVE BILL OF INFORMATION (CLAIM NO. 2)

Billard alleges that the his constitutional rights were violated because the bill of information failed to charge him in the second count with a crime that he committed and because the trial court considered evidence other than the bill itself to deny his motion to quash.  Billard does not allege that the bill of information was deficient in content or form.  He alleges instead that the victim in the second count, David Chryssoverges, gave a statement to the police which would show that he was never threatened nor was anything taken from his person.  Consequently, Billard alleges that the prosecution had no facts to support the charge in the second count.

Billard's counsel raised this issue on direct appeal.  The Louisiana Fifth Circuit held that the trial court properly denied the motion to quash.  The state appeal court held

that the motion to quash was not a proper mechanism to challenge the merits of the charges in the bill of information or raise the issues of guilt or innocence.  The Louisiana Supreme Court denied the subsequent writ application without reasons.  The Louisiana Fifth Circuit's ruling was the last reasoned opinion on this issue.  Ylst.

This court need not consider the sufficiency of a bill of information on habeas corpus review.  The United States Court of Appeals for the Fifth Circuit has declined to review claims of insufficient indictment forms because "[t]he sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction . . . [and] this can be determined only by looking to the law of the state where the indictment was issued." Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985) (citation and quotations omitted) (emphasis added);  Lockett v. Anderson, 230 F.3d 695, 702 (5th Cir. 2000); Murphy v. Beto, 416 F.2d 98, 100 (5th Cir. 1969).  Resolution of such an issue on federal habeas review is precluded "[w]hen it appears . . . that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case. . . ."  Id. (quotation and citation omitted); McKay v. Collins, 12 F.3d 66, 68-69 (5th Cir. 1994) (where state courts held that indictment is sufficient under state law, federal court need not address that issue on habeas review); Murphy, 416 F.2d at 100 ("[J]urisdiction to try an offense includes jurisdiction to determine whether the offense is properly charged.")

In this case, the Louisiana Supreme Court acquiesced to the appellate court's determination that Billard failed to present a basis to quash the bill of information. As noted by the Louisiana Fifth Circuit, Billard only suggested that he was not guilty of the second count involving Chryssoverges and did not raise an appropriate issue as to the sufficiency of the bill of information.

The United States Supreme Court has held that the charging instrument in a criminal case is sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense and affords him protection against double jeopardy. United States v. Debrow, 346 U.S. 374 (1953); United States v. Montemayor, 703 F.2d 109, 117 (5th Cir. 1983). In this case, Billard does not challenge the form or propriety of the bill of information. He was able to prepare his defense and was well aware of the charges against him, as evidenced by the motion to quash which forms the basis of this claim and the other motions in the record. Of course, his guilt was later determined at trial by the jury.

Billard's claim challenging the inclusion of the second count in the bill of information is not a proper issue for habeas corpus review. Nor has Billard alleged or shown that the bill of information was insufficient in any way under the standards of Debrow and the other federal decisions cited above. For these reasons, denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court precedent. Billard is not entitled to federal habeas corpus relief on this claim.

21

VII.   ALLEGED USE OF FALSE OR PERJURED TESTIMONY (CLAIM NO. 4)

Billard argues that the State knowingly presented false testimony or allowed perjured testimony to be given by David Chryssoverges and Gregory Smith without correcting it.  He cites alleged inconsistencies between their trial testimony and other statements given to police at the time of the robbery.

Billard's counsel first raised this issue on direct appeal as part of his challenge to the sufficiency of the evidence at trial.  The Louisiana Fifth Circuit held that the statements were introduced at trial and challenged on cross-examination.  The court held that the resolution of any such conflicts was a credibility determination reached by the jury in finding him to be guilty and which could not be overturned on appeal.  The Louisiana Supreme Court denied the subsequent writ application without reasons.  The appellate decision was the last reasoned opinion on the issue.

The State denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected.  Giglio v. United States, 405 U.S. 150 (1972); Napue v. Illinois, 360 U.S. 264 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996).  To obtain relief, the defendant must show that (1) the testimony was actually false, (2) the State knew it was false, and (3) the testimony was material.  Duncan v. Cockrell, 70 Fed. Appx. 741, 744, 2003 WL 21545926 at*3 (5th Cir. July 3, 2003); Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir. 1993).  False evidence is "material" only if there is any reasonable likelihood that it could have

affected the jury's verdict.  <u>Duncan</u>, 70 Fed. Appx. at 744, 2003 WL 21545926 at*3

(citing <u>Nobles</u>, 127 F.3d at 415).

Billard has offered nothing to support his assertion that any of the statements by

Chryssoverges and Smith were false.  He also has not provided any support for his

suggestion that the State knew that the victims would testify as they did.  Most

significantly, Billard has also failed to establish that, even if the victims testified falsely,

the testimony affected the jury's decision in violation of due process.

The jury heard the conflicting testimony of both victims at trial.  In addition,

Billard's counsel brought out the alleged inconsistencies during her cross-examination

of each victim.[33]  For example, during Chryssoverges's testimony, counsel questioned

him about his testimony at trial and how it differed from the statement made to police on

the night of the robbery and his testimony at an earlier hearing in court.

In fact, counsel obtained testimony from Chryssoverges admitting that his

statement and testimony were inconsistent.

> Q.    In reference to what you told - - Well let me back up.  What you told the
> police the night of the incident is very difference from what you're saying
> here today, isn't it?
>
> A.    Not so much that it's different, that might be just a little out of order and
> that - -
>
> Q.    Less detail?

---

[33]St. Rec. Vol. 6 of 8, Trial Transcript at pp. 70-71, 98-99, 125-26, 145-48.

A.     Less detail.  Much less detail and the reason why that is so, is because of the chaos and mayhem and the scene.  At the time that the police officers arrived.

Q.     But since then, since the night of the incident you've had time to reflect and gather your thoughts and details as to what actually happened, is that correct?

A.     That's correct.

Q.     Which is what you're testifying to here, today?  What you're testifying today - -

A.     Yes, ma'am.

Q.     Which you feel - -

A.     Is what exactly happened, yes and it's inconsistent with - -

Q.     I'm sorry, you can say what you were going to say.

A.     And it is inconsistent with the police statement, yes.  It was given hastily.

State Record Volume 3 of 6, Trial Transcript, part 2, p. 118, 11/7/01.

Chryssoverges went on to admit before the jury that he only saw Smith and the female perpetrator in the van before he ran back inside to call police.[34]  He had told police in the earlier statement that he saw two people at the van with Smith.[35]

Billard's counsel continued to question Chryssoverges about other differences between his direct testimony and the prior statements.  She asked him specifically about the discrepancies in the details about the incident, the description of the weapons and the

---

[34]St. Rec. Vol. 3 of 6, Trial Transcript, part 2, p. 118, 11/7/01.

[35]Id.

identity and description of the perpetrators.[36]  Counsel also presented a copy of the police statement as a defense exhibit.

Similarly, counsel vigorously cross-examined Smith about the different descriptions he gave of the weapons used that night.[37]  She also presented a copy of Smith's police statement as a defense exhibit.  Counsel went on to question the reliability of the identification made by Smith compared with his in-court identification and his earlier inability to identify a photograph of the black male perpetrator.[38]

In spite of counsel's extensive and detailed cross-examination of both victims, the jury returned a guilty verdict.  In addressing Billard's arguments, the Louisiana Fifth Circuit held that "[i]n returning the guilty verdicts, the jury obviously resolved any discrepancies between the statements and the trial testimony in favor of the state."[39]  The guilty verdict itself is indicative of the credibility determinations made by the jury, determinations which the jury was fully empowered to make, and those factual determinations are entitled to deference on federal habeas corpus review.

---

[36]Id., p. 118-133.

[37]St. Rec. Vol. 2 of 6, Trial Transcript, part 1, p. 80, 11/7/01.

[38]Id., p. 80-88.

[39]St. Rec. Vol. 5 of 6, 5th Cir. Opinion, 03-KA-319, p. 6, 7/29/03.

For these reasons, Billard has failed to establish that the state courts' denial of relief on this claim was contrary to or an unreasonable application of Supreme Court precedent. Petitioner is not entitled to relief on this claim.

## VIII. INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 5)

Billard alleges that his counsel was ineffective for the following reasons: (1) She failed properly to argue the motion to quash the second count. (2) She failed to have Billard's confession statement admitted in its entirety. (3) She failed to interview and call witnesses, specifically Danny Petal, the motel manager. (4) She failed to investigate, procure and present evidence that the victims' testimony was false.

Billard first raised this claim in his state court application for post-conviction relief. The state trial court denied relief, citing Strickland v. Washington, 466 U.S. 668 (1984), and related state case law. The state trial court held that the complained of acts were discretionary trial tactics and that Billard did not establish deficient performance or prejudice.[40] The Louisiana Fifth Circuit and Louisiana Supreme Court denied the subsequent writ applications without further reasons. The trial court's ruling was the last reasoned decision on the issue.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable

---

[40]St. Rec. Vol. 5 of 6, Trial Court Order (3 pages), 11/2/04.

application of Strickland, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel.

In Strickland, the court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, the court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough, however, under Strickland 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of

27

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).  "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.  Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591.  The burden is on petitioner to demonstrate that counsel's strategy was unreasonable.  Strickland, 466 U.S. at 689.

A.    PRESENTING THE MOTION TO QUASH

Billard alleges that counsel erred by arguing in the motion to quash concepts of innocence and guilt as to the second count in the bill of information.  Billard argues that this was an improper use of the motion to quash.  In a curious twist, he argues that counsel should have used open-file discovery to establish that he was not guilty and did not commit the acts charged in the second count.

As discussed above, the Louisiana Fifth Circuit held on direct appeal that the motion to quash did not challenge procedural failings in the bill of information.  Instead, it improperly brought factual questions of innocence or guilt, subjects not reviewable in a motion to quash under Louisiana law.

Thus, although the motion to quash was not proper under Louisiana law, Billard has failed to establish any prejudice from its urging by counsel.  The motion to quash did not prevent Billard from developing and presenting a defense to the charge in count two, the armed robbery of Chryssoverges.  The presentation of the motion did not in any way cause the result of the proceeding to be different in that regard.

Billard does not suggest, and the record does not show, any other deficiency in the bill of information which could have been urged by counsel.  Billard only suggests, as did counsel in the motion, that he did not commit the armed robbery of Chryssoverges and should not have been so charged.  This was the defense later urged at trial.  The

motion to quash did not alter his defense or affect the ultimate result of the trial in that regard.

The denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court precedent. Billard is not entitled to relief on this aspect of the ineffective assistance of counsel claim.

B.    UNDERLINED EXCLUSION OF PORTIONS OF HIS STATEMENT

Billard argues next that counsel should have had the entirety of his pretrial statement admitted into evidence. He complains that counsel allowed the State to handpick inculpatory sections of the statement to admit at trial.

At trial, the prosecutor and defense counsel discussed the admissibility of Billard's statement made to police in Mississippi on January 29, 1999.[41] Counsel agreed that the entire statement would be admitted except for a small portion of pages 13 and 14 as they described it. The state trial court required counsel to read the excised portions of the statement into the record prior to trial. The portions left out of the record relate to Billard's statement that he was once in possession of a red Intrepid which was not stolen and that on January 29, 1999, the day of his arrest in Mississippi, he was in a brown van that had been stolen and given to him by a friend named Alex.

Construing petitioner's argument broadly, it appears that Billard is suggesting that his self-serving testimony to police that he did not steal the van, but instead received it

---

[41]St. Rec. Vol. 2 of 6, Trial Transcript, part 1, p. 9-14, 11/7/01.

from someone else who stole it, was in some way relevant and exculpatory.  Counsel's failure to include this one piece of the statement, assuming it to be true, is not deficient performance and did not change the course of the trial.

Counsel made a decision to exclude the testimony as it related to other criminal activity and which was not truly exculpatory.  For example, in one part of the excluded testimony, Billard admits the following: "We got busted in the van and said that we stole that."[42]  The admission that he was involved in the theft of the van was not exculpatory.

Counsel's decision to exclude this portion of the statement does not appear to have been deficient when judged from her perspective at the time of trial.  Billard also has not shown how he was prejudiced by the exclusion of his statement that he was involved in the theft of the van.

The denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court precedent.  Billard is not entitled to relief on this aspect of the ineffective assistance of counsel claim.

C.    FAILURE TO CALL WITNESS

Billard argues that his counsel should have interviewed and called as a witness Danny Petal, the manager of the motel where Billard and Harrell stayed in Mississippi.  Billard contends that Petal could have testified about his personal belongings and stay at the motel.

---

[42]Id., p.13.

Billard does not, however, explain how this made or would have made any difference in his defense.  Billard's counsel was able to cross-examine Detective Rozeirio Camel about his trip to the Oasis Motel and his obtaining of Billard's personal affects.[43]

Camel testified that he spoke with the manager, obtained the names of the two people who stayed in the room, and was told that the belongings of these people were stored in a garage area.  Counsel elicited from Camel that the names used were not that of Billard or Harrell.  Camel was also unable to confirm that no one else had used the room.  He could only say that the manager did not recall seeing anyone else.

In addition, the boxes and bags he located were not marked with a room number, nor did the manager accompany him to the garage area to identify the boxes as those he referenced.  Thus, counsel used her best efforts in an attempt to show that Detective Camel could not actually link the items and guns found at the hotel with Billard or Harrell.

Had counsel called Patel to the stand, he may well have confirmed Camel's testimony and the items found in the garage.  He also could have identified Billard as the man he remembered and who used a different name at the hotel.  This would not have been beneficial to the defense.

"'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of Strickland if [counsel] could have concluded, for tactical reasons, that

---

[43]St. Rec. Vol. 3 of 6, Trial Transcript, part 2, p. 150-156, 11/7/01.

attempting to present such evidence would be unwise.'"  Williams v. Cockrell, 31 Fed.
Appx. 832 (5th Cir. 2002) (quoting Williams v. Cain, 125 F.3d 269, 278 (5th Cir. 1997)).
Furthermore, "'[c]omplaints of uncalled witnesses are not favored, because the
presentation of testimonial evidence is a matter of trial strategy and because allegations
of what a witness would have testified are largely speculative.'"  Graves v. Cockrell, 351
F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521
(5th Cir. 1978)).  Thus, counsel's failure to call a witness who could offer no assistance
to the defense was not deficient or prejudicial.

     For these reasons, the denial of relief on this issue was not contrary to or an
unreasonable application of Supreme Court precedent.  Billard is not entitled to relief on
this aspect of the ineffective assistance of counsel claim.

D.     FAILURE TO PRESENT EVIDENCE OF FALSE TESTIMONY BY VICTIMS

     Billard next alleges that counsel erred by failing to present evidence to show that
the victims falsely testified.  As discussed above, Billard has not established that the
victims testified falsely or that perjured testimony was used at trial.

     Furthermore, the record shows that Billard's counsel was able to show the jury the
numerous inconsistencies in the statements made by both Smith and Chryssoverges.  As
outlined above, Billard's counsel systematically challenged each inconsistency and
difference in the various statements and testimony of each victim.  To repeat her efforts

here would be repetitive of the discussion in Section VII of this report and the state record citations therein.

The record shows that counsel made a concerted effort to draw out testimony on the inconsistent testimony of the victims. Billard's suggestion to the contrary is contradicted by the record.

Accordingly, the denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court precedent. Billard is not entitled to relief on this aspect of the ineffective assistance of counsel claim.

## **RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the petition of Thomas Billard for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___6th___ day of June, 2006.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

35